IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02851-PAB-MEH

NOE CARRILLO FRANCO,

    Plaintiff,

v.

STURGEON, in individual and official capacities,
CINDY NOLD, in individual and official capacities,
KERRY BARON, in individual and official capacities,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [filed October 6, 2014; docket #36]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. L.Civ.R 72.1C, the motion has been referred to this Court for recommendation. The Court finds that oral argument would not materially assist in the adjudication of the motion. For the reasons set forth below, the Court RECOMMENDS the motion be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

On October 18, 2013, Plaintiff initiated this lawsuit under 42 U.S.C. §1983 as a *pro se* litigant incarcerated in the Buena Vista Correctional Facility and the Colorado Department of Corrections (DOC). (Docket #1.) On November 6, 2013 Magistrate Judge Boyd N. Boland directed Plaintiff to file an amended complaint to cure deficiencies in the original complaint. (Docket # 5.) Plaintiff filed an amended complaint on December 3, 2013 but it did not include all of the factual allegations in support of the claims asserted in the original complaint and, instead, added new allegations while asking the Court to incorporate by reference his original complaint. (Docket #6.) Judge Boland ordered Plaintiff to file a second and final complaint. (Docket # 7.) The operative complaint was filed on January 7, 2014. (Docket #8.)

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Second Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On June 6, 2013, Plaintiff fell on the kitchen floor during his work assignment ("the slip and fall"). (Docket #8, p.3.) Plaintiff injured his shoulders, right knee, left wrist, and neck. (*Id*.) On June 10, 2013, Plaintiff was examined by Defendant Sturgeon, a nurse practitioner, who determined that the injuries to his shoulders were "old" and unrelated to the slip and fall. (*Id*.) According to Plaintiff, Defendant Sturgeon only evaluated his left shoulder, even though Plaintiff informed her that his right shoulder, right knee, left wrist, and neck were also injured. (*Id*.) Defendant Sturgeon implemented a work restriction prohibiting Plaintiff from lifting more than twenty pounds. (*Id*.) She further prescribed Motrin twice daily for pain. (*Id*.) When the prescription was entered into the

computer, it only reflected "Motrin 1 x daily." (*Id.*)  On July 2, 2013, the computer entry was corrected to reflect that Plaintiff was prescribed Motrin twice daily.  (*Id.* at p.4.)

On July 30, 2013, Plaintiff was examined by Dr. Fowler.  (*Id.*)  Dr Fowler informed Plaintiff that he was injured by the slip and fall because his muscles and ligaments had been weakened by cortisone shots. (*Id.*) On July 31, 2013, Plaintiff had X-rays taken of his shoulder.  (*Id.*)

Plaintiff asserts two claims based on the foregoing allegations: (1) Defendants violated his Eighth Amendment rights by failing to provide adequate medical care; and (2) Defendants violated the Equal Protection Clause of the Fourteenth Amendment.  (Docket #8, pp.6-7.)  Defendants filed a Motion to Dismiss on October 6, 2014 on grounds that: (1) Defendants are entitled to Eleventh Amendment immunity in their official capacities; (2) Plaintiff fails to allege personal participation on behalf of Defendants Baroni and Nold; (3) Plaintiff fails to state an Eighth Amendment Claim; (4) Plaintiff fails to state an Equal Protection Claim; (5) Defendants are entitled to qualified immunity; and (6) Plaintiff fails to state a claim for damages. (Docket #36.)  On November 3, 2014, Plaintiff filed a response to the Motion to Dismiss.  (Docket #42.)  Defendants did not reply.  The Court has reviewed the operative pleading, the motion, the response, and the applicable law, and is sufficiently advised.

## LEGAL STANDARD

### I.      Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do

so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

**II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the

4

reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

### III. Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor

5

syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin,* 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

**I.      Sovereign Immunity**

Defendants in their official capacities contend they are entitled to sovereign immunity from damages. Plaintiff argues that Defendants are not protected by sovereign immunity because they were following DOC policies.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes

a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, in addition to monetary damages, Plaintiff seeks an order requiring Defendants to "[1] immediately arrange for [him] to be examined by an orthopedic specialist; [2] immediately arrange for [his] need for physical therapy or other follow up medical treatment to be evaluated by a[n] orthopedic specialist; and [3] carry out without delay all medical treatment ordered by such orthopedic specialists." (*See* docket #8 at p.9.) Any claim by the Plaintiff for money damages against the Defendants in their official capacities is barred by the Eleventh Amendment. However, the Plaintiff also seeks prospective injunctive relief in the forms of an orthopedic examination and any orthopedic follow-up care. *Id.* To the extent the Plaintiff has standing to seek such relief and states plausible Eighth Amendment and/or equal protection claims, the requested injunctive relief

falls within the *Young* exception to Eleventh Amendment immunity. *See, e.g., Buchwald*, 159 F.3d at 496 (where plaintiff alleged continued exclusion from medical school violated her constitutional rights, she stated a proper claim against defendants in their official capacities seeking a prospective injunction ordering her admission to the medical school). Accordingly, the Court recommends that Plaintiff's claims for prospective injunctive relief against the Defendants in their official capacities may proceed, as long as the Plaintiff states plausible claims for equal protection violations and/or cruel and unusual punishment.

**II.     Qualified Immunity**

Defendants also assert that they are entitled to qualified immunity on the claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995); *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff

to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, Defendants argue that Plaintiff has failed to allege personal participation on behalf of Defendants Baroni and Nold. Accordingly, the Court begins with an analysis of whether Defendants Baroni and Nold can be found individually liable for a violation under § 1983. Next, the Court examines whether Plaintiff has demonstrated on the alleged facts that Defendants violated his constitutional rights. If the Court finds that Plaintiff's facts state plausible violations of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

### A. Personal Participation

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, there must be an affirmative link between actions taken by a defendant and any plan or policy put into effect that violates a plaintiff's constitutional rights. *Dodds v. Richardson*, 614 F.3d 1185, 1200-01 (10th

Cir. 2010).

Supervisory status alone does not create § 1983 liability. *Duffield v. Jackson,* 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, liability of a supervisor under § 1983 requires "allegations of personal direction or of actual knowledge and acquiescence." *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1481 (10th Cir. 1993) (cited with approval in *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)). Thus, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green,* 108 F.3d at 1302 (quotation and brackets omitted). In other words, § 1983 liability is properly imposed "upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights." *Dodds*, 614 F.3d at 1201.

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show that each Defendant caused the deprivation of a federal right. *See Kentucky v. Graham,* 473 U.S. 159, 166 (1985). Here, Plaintiff alleges liability against Defendant Baroni because she was the health services administrator and answered his Step II Grievance. (Docket #8, pp. 2 and 5.) Plaintiff does not allege facts about Defendant Baroni's personal participation, failure to supervise, or other basis to establish an affirmative link with his alleged constitutional deprivation. To the extent Plaintiff relies on Defendant Baroni's answer to his grievance, "[t]he denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Thus, the Court recommends dismissing the claims against Defendant Baroni.

With regard to Defendant Nold, Plaintiff concedes that she "is not being listed as a defendant due to her denial of the Plaintiff's grievance." (Docket #8, p.5.) Instead, Plaintiff alleges Defendant Nold, a nurse, "could have affirmatively assisted the Plaintiff in seeking the proper medical evaluations to determine the extent of his injuries." (*Id.*) Plaintiff does not allege how Defendant could have assisted Plaintiff, or that she had the authority to do so. This single vague and speculative sentence is insufficient to establish the "requisite degree of culpability" required for § 1983 liability. *Dodds*, 614 F.3d at 1201; *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) ("[F]actual allegations must be enough to raise a right to relief above the speculative level."). Plaintiff alleges no other basis to establish an affirmative link between Defendant Nold's actions and his alleged constitutional violation.

Accordingly, the Court recommends dismissing the claims against Defendants Baroni and Nold for failure to allege personal participation.

B.   <u>Eighth Amendment</u>

Defendants do not argue that Plaintiff has failed to allege Defendant Sturgeon's personal participation; thus, the Court will proceed to determine whether Plaintiff has plausibly alleged that Defendant Sturgeon violated his Eighth or Fourteenth Amendment rights.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by

alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a

12

delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Here, Plaintiff alleges Defendant Sturgeon disregarded a substantial risk of harm to Plaintiff by not providing Plaintiff with "the same level of care that would be expected if he was able to go to a hospital." (Docket #8, p.5.) Plaintiff was examined by Defendant Sturgeon on June 10, 2013, four days after the slip and fall. (*Id.* at p. 3.) Plaintiff's complaint states that Defendant Sturgeon briefly examined him and told him that his injuries were "old" and "unrelated" to the slip and fall. She prescribed Motrin for the pain and placed him on a work restriction of no weight lifting above 20 pounds and no weight training. Despite Plaintiff's own allegations that he was examined and treated by Defendant Sturgeon, Plaintiff claims the care was inadequate because Defendant Sturgeon did not thoroughly examine his injuries, and did not immediately send him to a medical specialist or request an X-ray or an MRI of his shoulder. However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Even assuming Defendant Sturgeon failed to correctly evaluate the seriousness of Plaintiff's injury, "a misdiagnosis, even if rising to the level of medical malpractice, is simply insufficient . . . to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006). This is so because a "doctor's culpable state of mind is not established even if the doctor's medical judgment may have been objectively unreasonable." *Id.* Thus, Plaintiff's allegations that Defendant Sturgeon should have sent him to a specialist and taken an X-ray or an MRI do not rise to the level of deliberate indifference to Plaintiff's serious medical needs.

The Court finds Plaintiff's pleadings do not meet the subjective component of an Eighth Amendment violation. Accordingly, the Court recommends dismissing Plaintiff's Eighth Amendment claim of failure to provide adequate medical care.

C. Equal Protection Claim

Plaintiff also claims that Defendants discriminated against him in violation of the Equal Protection Clause because other inmates have been taken to the local hospital for injuries.

When considering an equal protection claim, the Court applies a rational basis test if "the challenged government action does not implicate either a fundamental right or a protected class." *Price–Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008). Plaintiff does not assert a fundamental right or differential treatment based on a suspected class. Therefore, Plaintiff must show that Defendants treated him differently than other inmates who were similarly situated and that the distinction was not "reasonably related to some legitimate penological purpose." *Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (citing *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994)).

Here, Plaintiff alleges that he was similarly situated to other inmates who visited the medical department with complaints that they were "in pain and the pain was excruciating." (Docket #8, p.7.) He provides two examples. On October 8, 2013, an inmate was injured as a canine dog trainer and "the very next day, he was taken to the local hospital for X-rays and examination(s)." (*Id.*) Another inmate burned his hand in the kitchen and was also taken to the local hospital. Aside from experiencing pain, Plaintiff does not allege that either of these injuries were similar to his injuries. Thus, the Court finds that Plaintiff has not met the threshold requirement of an Equal Protection claim.

Accordingly, the Court recommends dismissing Plaintiff's Equal Protection claim for failing

to make a threshold showing that he was similarly situated to inmates who were sent to the hospital.

### III. Damages

Recognizing that the District Court may disagree and find Defendants are not entitled to qualified immunity on one or both claims, the Court addresses Plaintiff's claim for compensatory and punitive damages.

The Prison Litigation Reform Act (PLRA) states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "While claims for mental and emotional distress are cognizable under § 1983, under [42 U.S.C.] § 1997e(e) 'such a suit [by a prisoner] cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Lawson v. Engleman*, 67 F. App'x 524, 526-27 (10th Cir. 2003) ((quoting *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999)); *see also Turner v. Schultz,* 130 F. Supp. 2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins,* 165 F.3d at 807). "[A] prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (citations omitted).

The Court has reviewed the complaint and has not found any allegations of specific harm – physical or otherwise – resulting from Defendants' alleged constitutional violations. Plaintiff alleges that he sought, through the grievance process, "further examination including a[n] MRI or X-ray" in order to prevent "further injury and pain." (Docket #8, p. 4.) This general statement regarding preventative medical care does not establish that Plaintiff suffered any harm from Defendants' treatment or lack of treatment of his injuries. Plaintiff alleges only that he was injured from the slip and fall, and he does not allege that Defendants caused that accident. Thus, the Court

concludes Plaintiff has not alleged that he suffered physical injury as a result of constitutional violations. The Court therefore recommends dismissing Plaintiff's claims for compensatory damages.

Defendants also contend that Plaintiff's claims for punitive damages should be dismissed. The PLRA does not bar punitive damages. *Searles v. Van Bebber*, 251 F.3d 869, 880-81 (10th Cir. 2001) ("as a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury"). Punitive damages are available in a § 1983 action when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Because the Court has found Plaintiff's allegations do not sufficiently state a culpable mental state for a constitutional violation, the Court likewise finds Plaintiff has failed to allege Defendants acted with the state of mind required for a punitive damages award.

Accordingly, the Court recommends dismissing Plaintiff's claims for punitive and compensatory damages.

## IV. Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to

amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)). Here, Plaintiff has previously amended his complaint based upon the Court's guidance during the initial review as to defective allegations in the original complaint. (*See* docket #5.) Additionally, Plaintiff's response brief does not mention any factual allegations suggesting he can cure the pleading deficiencies for his Eighth and Fourteenth Amendment claims.

Accordingly, the Court recommends Plaintiff be denied leave to file a third amended complaint.

## CONCLUSION

In sum, the Court finds that Plaintiff has failed to state a plausible claim under the Eighth or Fourteenth Amendments against the Defendants in their individual and official capacities in this case. Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [filed October 6, 2014; docket #36] be **GRANTED**. In light of this Court's recommendation to dismiss the complaint, the Court recommends that Plaintiff's Motion for Preliminary Injunction [filed September 26, 2014; docket #35] be **DENIED** as moot.

Entered and dated at Denver, Colorado, this 9th day of December, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge